402 F.2d 749
 The ANACONDA COMPANY, Appellant,
v.
GREAT FALLS MILL & SMELTERMEN'S UNION NO. 16 OF The
INTERNATIONAL UNION OF MINE MILL & SMELTERWORKERS
and the International Union of Mine,
Mill& Smelterworkers, Appellees.
 No. 21741.
 United States Court of Appeals Ninth Circuit.
 Oct. 31, 1968.
 
 R. Lewis Brown, Jr. (argued), Butte, Mont., for appellant.
 Charles Huppe (argued), Helena, Mont., for appellees.
 Before ELY and CARTER, Circuit Judges, and PECKHAM,* District judge.
 ELY, Circuit Judge:
 
 
 1
 This appeal is from a summary judgment which upheld an arbitration award. The arbitrator rested his award upon a collective bargaining agreement between the appellant employer, Anaconda, and the appellee, Great Falls, a labor organization. The District Court had jurisdiction under 29 U.S.C. 185 and ours is conferred by 28 U.S.C. 1291.
 
 
 2
 The parties disagreed as to the order of priority in which employees of Anaconda were to be returned to work following a strike which occurred in January 1964. The union contended that provisions within the collective bargaining agreement relating to 'layoffs in a department' were applicable to the order of recall after this strike. The company here takes the position that the seniority provisions of the contract could have no application because they did not specifically apply to post-strike recall. The dispute was submitted to arbitration in the form of a broad question which reads:
 
 
 3
 'Did the Company violate the seniority provisions of the collective bargaining agreement in recalling and assigning employees to work between January 30th and February 12th, 1964.'
 
 
 4
 The collective bargaining agreement contained no specific provisions relating to the order of recalling employees after strikes. It did, however, provide an order of seniority for recalling employees after layoffs. The provision reads:
 
 
 5
 'Section 7. Layoffs in a Department:
 
 
 6
 '(a) When it is necessary to curtail the work force in a department or a department subdivision, the employee at the bottom of the applicable seniority list shall be the first to be curtailed. His plant seniority shall then govern as to whether he shall be retained in the plant or curtailed from the plant. The Company will furnish the local Union a list of those employees who are laid off.
 
 
 7
 '(b) In recalling employees after a curtailment, they shall be recalled as closely as possible in the reverse order to that described in part (a) of this Section provided they can perform the work available. * * *'
 
 
 8
 A hearing was conducted, and the arbitrator determined that Anaconda had violated the seniority provisions of the collective bargaining agreement because it failed to recall the employees in order of their departmental seniority.[1] In his opinion, the arbitrator recognized that seniority provisions normally have no application to the order of recalling employees after a strike. As to the present dispute, however, he concluded on the basis of presented evidence that the company 'must be held' to have interpreted the collective bargaining agreement in line with the position taken by the union. He wrote:
 
 
 9
 'It may be, as contended by the company, that the seniority provisions of a collective bargaining agreement ordinarily have no application to the order of recalling employees after a strike, in the absence of specific provisions to that effect.
 
 
 10
 'In this case, however, the company superintendent agreed to recall the men following this strike by departmental seniority as in the 1959 strike. Thus, the company must be held as having so interpreted the collective bargaining agreement between the parties.'
 
 
 11
 Anaconda now insists that the arbitrator did not confine himself to an interpretation of the collective bargaining agreement and that hence, the District Court should have overturned the award under the teaching of United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). There the Supreme Court held:
 
 
 12
 '(N)evertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.'
 
 
 13
 363 U.S. at 597, 80 S.Ct. at 1361.
 
 
 14
 Anaconda's contention is based upon a portion of the arbitrator's opinion in which it is pointed out that the collective bargaining agreement contains no specific provisions pertaining to the order of recalling employees after strikes.[2] That being true, Anaconda reasons that the arbitrator necessarily exceeded the scope of his authority in reaching his decision.
 
 
 15
 We cannot accept Anaconda's position. It is taken upon a ground which is too narrow, and it reflects a fundamental misconception of the nature of a collective bargaining agreement and the role of the arbitrator chosen by the parties to interpret such a compact. To hold that once an arbitrator determines that there are no specific provisions in the collective bargaining agreement dealing with the subject of the dispute he is powerless to continue to a resolution of that dispute would require us to disregard the salutary principles set forth in United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
 
 
 16
 In Warrior, the Supreme Court emphasized that collective bargaining agreements should not be treated as mere contracts, that they are in the nature of generalized codes designed to cover a myriad of possible problems which their draftsmen could not be expected to anticipate. 363 U.S. at 578, 80 S.Ct. at 1350. Hence, the Court recognized that there would often be 'gaps' to be filled by reference to the practices of the particular industry and shops covered by the agreement. Accordingly, the Court emphasized that the arbitrator, who is given the primary responsibility of interpreting the collective bargaining agreement in furtherance of industrial peace, should not be confined to the express provisions of the contract.
 
 
 17
 'The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law-- the practices of the industry and the shop-- is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.'
 
 
 18
 363 U.S. at 581-582, 80 S.Ct. at 1352.
 
 
 19
 It is clear to us that the arbitrator here involved fulfilled his responsibility in a manner comporting with the concepts expressed in Warrior. The disputants requested him to determine whether the seniority provisions of the collective bargaining agreement were violated. It is significant that the submitted question was a broad one, calling for a determination of the ultimate issue, the proper order of recalling employees. The parties did not request the arbitrator to determine, in the beginning, the preliminary question of whether or not, under the terms of the agreement, he was authorized to resolve the question which was presented to him. In resolving that question, the arbitrator found no specific provisions relating to the order of recall after strikes on the face of the agreement. There was, however, the provided seniority schedule applicable to employees returning to work after a layoff. By application of the 'common law of the shop,' the arbitrator concluded that these layoff provisions were subject to an interpretation supporting his disposition of the dispute.
 
 
 20
 The testimony revealed that after a strike which occurred in 1959, employees had been returned in order of their departmental seniority according to the agreement's layoff provisions. Furthermore, there was testimony that one of Anaconda's representatives, in response to an inquiry, had advised the union that when the strike here involved was settled the employees would be recalled 'by departmental seniority.' Upon the basis of this evidence, the arbitrator found an implied agreement to interpret the contract as requiring that the employees should have been recalled in that order.
 
 
 21
 We hold that the arbitrator, interpreting the contract with the aid of evidence of the relevant history and of the conduct of the parties, properly performed his role as defined by Warrior.
 
 
 22
 Affirmed.
 
 
 
 *
 Honorable Robert F. Peckham, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The arbitrator's conclusion reads as follows:
 'Based upon the considerations set forth above and good and sufficient reasons appearing therefor, it is the decision and award of the undersigned arbitrator as follows: '1. The company violated the seniority provisions of the collective bargaining agreement in recalling and assigning employees to work between January 30 and February 12, 1964, in that employees should have been recalled to work during the foregoing period in order of departmental seniority, but were not always recalled in that order. * * *'
 
 
 [2]
 The arbitrator wrote:
 'The contract provisions relating to seniority extend over several pages. Suffice to say for the purposes of this case that they provide, among other things, for both 'plant seniority' and 'departmental seniority'; that in the event of layoffs in a department, plant seniority is to prevail in recalling employees to work, and that there are no specific provisions relating to order of recalling employees after strikes.'